J. E. COLE, Complainant-Appellant, v. PERRY WINDLE, Defendant-Appellee.—463 S.W.2d 410.

Middle Section. October 30, 1970.

Certiorari Denied by Supreme Court February 16, 1971.

Cameron, Oakley & Jared, Cookeville, for complainant-appellant.

Officer & Officer, Livingston, Neal & Craven, Jamestown, for defendant-appellee.

PURYEAR, J. Complainant-appellant, J. E. Cole, filed his original bill in this case on June 5, 1969, to dissolve a partnership and liquidate the partnership assets which consisted of a one-third undivided interest in a 270 acre tract of land near Livingston in Overton County, Tennessee.

Defendant-appellee, Perry Windle, filed an answer setting up several defenses, including a plea of res judicata, and relying upon several statutes of limitations. The defendant also filed a cross-bill alleging that the complainant's claim was a cloud upon his title and praying that said claim be removed as such.

The case was tried upon oral and documentary evidence, after which trial the case was taken under advisement and a decree was entered on January 19,

1970, dismissing the complainant's bill and sustaining the defendant's cross-bill.

This decree was entered pursuant to memorandum opinion filed December 17, 1969, which memorandum opinion contains the following language:

> "As I view this case the original bill of the complainant must be dismissed, it being my opinion that the defense of res adjudicata is good. I hold also that the defense of the statute of limitations, which is made by the defendant, Perry Windle, is good and would have to be sustained." (Tech. Rec. p. 28).

The business relationships between the parties which led to the instant litigation began about the year 1950 when the parties to this suit started buying timber land for the purpose of reselling it at a profit. Prior to purchase of the undivided interest in the tract of land which is the subject of the present controversy, the parties completed at least three other transactions which were handled in accordance with an agreement between them that the profits on such transactions would be divided equally between the two of them.

One of the first transactions was the purchase of a tract of timber land from the Jackson heirs. On that particular transaction the parties agreed that $2,500.00 was the amount which could be realized as a profit from a resale of the Jackson tract, whereupon it was agreed between the parties that the defendant would buy the complainant's interest and pay him a profit of $1,250.00, which transaction was consummated.

Thereafter, the parties purchased a timber contract from one Joe Maxwell for $5,000.00, which timber contract was later sold to Cookeville Planing Mills for

$7,000.00, thus making a profit of $2,000.00 which was divided equally between the parties.

Another transaction concerned a tract of timber known as the Almonrode tract purchased by the parties for $1,000.00 and later resold for $2,000.00, the profits being divided equally between the parties, each of them receiving $500.00 profit.

In each of the foregoing three transactions the defendant furnished the money to purchase the property, but title thereto was initially taken in the name of complainant.

Prior to purchase of the property involved in the present litigation, the tract of 270 acres near Livingston in Overton County, Tennessee, was owned by some parties known as the Mitchell heirs, one of these parties being Mrs. Vella Mitchell who owned a one-third undivided interest which she inherited from her late husband, and the remaining two-thirds undivided interest was owned by Doctor E. W. Mitchell.

On November 4, 1951, the complainant purchased Mrs. Vella Mitchell's one-third undivided interest in said land for $13,319.15 and Mrs. Mitchell conveyed said one-third undivided interest to the complainant by deed dated November 5, 1951. The defendant furnished the entire amount of $13,319.15 to purchase this tract of land and, at that time, it was agreed between complainant and defendant that this property, like the other property which had been purchased by them for resale, would be sold and the profit divided equally between them.

However, there is a sharp dispute between the parties as to the period of time within which said one-third undivided interest in the Mitchell tract was to be sold.

There is also a sharp dispute between the parties as to whether or not the defendant was to be paid interest on the $13,319.15 purchase money before the profit on the transaction was determined and divided.

Shortly after the property was purchased from Mrs. Mitchell, complainant delivered the deed to the one-third undivided interest in said property to the defendant for safe-keeping and the deed was not recorded at that time.

On April 17, 1959, complainant filed a partition suit against the defendant and Doctor E. W. Mitchell in the Chancery Court of Overton County by which he sought to have the entire tract of land of 270 acres sold for partition.

However, prior to the filing of this partition suit, some offers were made for the timber on the entire tract of land, but none of these offers were accepted, due to the fact that the defendant and Doctor Mitchell did not wish to sell said timber at that time.

Also some negotiations have been held between the complainant and defendant in an attempt to reach some agreement as to an amount by which one of the parties would sell to the other for an agreed price, based upon a buy or sell option. However, none of these negotiations ever led to an agreement between the parties and as a result thereof, this litigation and the partition suit filed on April 17, 1959, ensued.

Doctor Mitchell and the defendant, Windle, each filed separate answers to the bill filed by complainant in the partition suit on April 17, 1959, and in that former suit, the defendant, Windle, also filed a cross-bill alleging that the complainant's claim was a cloud upon his title and seeking to have it removed as such.

After the former suit was filed, the Honorable A. F. Officer, then Chancellor of the Chancery Court of Overton County, Tennessee, recused himself and it was agreed between counsel for all of the parties that the former suit be transferred to the Chancery Court of Warren County, Tennessee.

Said former suit was heard by the Honorable H. J. Garrett, Chancellor of the Chancery Court of Warren County, Tennessee, on August 14, 1959, as a result of which hearing Chancellor Garrett dismissed the complainant's bill with prejudice and also dismissed Windle's cross-bill without prejudice, by decree entered on September 23, 1959, which decree became final before the instant suit was filed.

It was this decree entered by Chancellor Garrett on September 23, 1959, which Chancellor Camp held, in his memorandum opinion, to be res judicata in the instant suit.

From Chancellor Camp's decree of January 19, 1970, the complainant, J. E. Cole, has prayed and perfected his appeal to this Court and filed four assignments of error.

The first assignment of error is to the effect that the Chancellor erred in holding that the defense of res judicata was applicable to the present cause.

This assignment requires us to carefully examine and scrutinize the pleadings and justiciable issues raised in the former suit filed by complainant against Windle and Doctor Mitchell on April 17, 1959.

Although none of the evidence which was heard in the former suit is before us, the pleadings and decrees

therein have been filed in the instant suit and made a part of the bill of exceptions.

The original bill in that suit contains the following allegations:

"That the complainant and the defendant, Dr. E. W. Mitchell, are the owners as tenants in common of the hereinafter described tract of land located in the Sixth Civil District of Overton County, Tennessee. Complainant owns a one-third (⅓) undivided interest in this land, and the defendant, Dr. E. W. Mitchell, owns the other two-thirds (⅔) undivided interest."

\*   \*   \*   \*   \*   \*

"The defendant, Perry Windle, furnished the money with which the complainant bought the interest he now holds in this land; this was done with the understanding that when complainant sold the land, defendant, Perry Windle, was to get fifty (50%) percent of the profit that complainant made. Defendant, Perry Windle, did not want complainant to have the deed to this land recorded. Complainant was reluctant to be responsible for the safekeeping of the said deed without its being recorded, as he had no vault to put it in, and upon defendant's, Perry Windle's, suggestion, gave it to him to be placed in his vault for safekeeping. Complainant has asked defendant, Perry Windle, for the deed on numerous occasions, but the defendant, Perry Windle, has failed and refused to give it to him." (B. of E. pp. 145, 147 and 148).

The answer, which is made a part of the cross-bill filed by defendant, Perry Windle, in the former suit, contains the following averments.

"For the reasons hereinafter shown this defendant denies that complainant J. E. Cole is the owner of a one-third undivided interest in said lands as described in Paragraph I of complainant's bill, however, he admits that his co-defendant, Dr. E. W. Mitchell, is the owner of a two-thirds undivided interest in said lands."

\* \* \* \* \* \*

"This defendant admits that he did furnish the sum of $13,319.15 with which to pay Mrs. Vella Mitchell for a one-third undivided interest in the lands sought to be sold in this cause, however, he denies that it was ever contemplated by either the complainant J. E. Cole or the defendant Perry Windle that complainant Cole would take any legal title to the lands. However, this defendant, perhaps *indiscretely* did have the title or deed made to the complainant J. E. Cole, but it was specifically understood by both parties at the time of this transaction that the property, or interest in the property, was to belong to the defendant Perry Windle, and that Cole was merely acting as the agent for the defendant Perry Windle in that he was to get fifty (50%) percent of the profits realized from the sale of the undivided one-third interest if and when a purchaser could be found, and Perry Windle was to get six (6%) percent on his money to be paid annually, provided a suitable purchaser could not be found within sixty days from November 5, 1951, the date the lands, or the one-third interest in same, were purchased from Mrs. Vella Mitchell.

This defendant denies that complainant owns any interest whatever in the lands sought to be sold in this

cause, and he denies that he has any interest whatsoever in same, but merely holds a naked deed title. This defendant denies that complainant J. E. Cole has such interest in said lands as would entitle him to bring a bill in this Honorable Court seeking a sale of same, and he avers that the complainant J. E. Cole should be repelled from court." (B. of E. pp. 160, 161 and 162).

In the final decree entered in the former suit on September 23, 1959, the following adjudication was made:

"At the conclusion of all the testimony offered on behalf of complainant, defendants moved the Court that the cause be dismissed and that the Cross-Bill filed by the defendant Perry Windle be sustained. After hearing argument of Counsel on this motion the Court was of the opinion that defendant's motion was good insofar as it applied to complainant's Bill, however, the Court was of the opinion that the Cross-Bill had not been sustained by the proof and that it should also be dismissed, but without prejudice.

It is therefore, ordered, adjudged and decreed by the Court that complainant's Bill be and is dismissed with prejudice and that the Cross-Bill be and is also dismissed but without prejudice.

The costs incident to the cause are adjudged against the original complainant J. E. Cole and the surety on his costs bond, for the collection of which execution is awarded." (B. of E. pp. 178 and 179).

It is significant that the former suit was filed by Cole individually and that the defendants were Perry Windle and E. W. Mitchell, individually. No partnership is impleaded by any of the parties in that suit and none of the

parties claimed or averred that they were acting in behalf of or for the use and benefit of any partnership.

It is conceded, of course, that the parties in the former suit and the parties in the instant suit are the same, with the exception that Doctor E. W. Mitchell was made a party defendant in the former suit. One of the leading cases in Tennessee on the effect of former adjudication of disputes between the same parties is Beard v. Beard (1928), 10 Tenn.App. 52, wherein this Court said:

"In order that a judgment may be effective as res adjudicata it is essential that the parties sought to be precluded thereby should have sued or have been sued in both cases, in the same capacity, or character and to enforce the same right, and it must appear not only that the subject-matter of the two suits is the same, but that the proceedings were for the same subject and purpose, the same point being directly in issue. [Memphis City] Bank v. Smith, 110 Tenn. 337, 75 S.W. 1065." Supra, p. 55

Another case involving this same question is Pile v. Pile (1915), 134 Tenn. 370, 183 S.W. 1004, wherein the Supreme Court said:

"In order that a judgment may be effective as res adjudicata, it is essential that the party sought to be precluded thereby should have sued or been sued in both cases, in the same capacity or character and to enforce or have adjudged the same right, and it must appear not only that the res affected by the two suits is the same, but that the proceedings were for the same object or purpose, the same point being directly in issue. [Memphis City] Bank v. Smith, 110 Tenn. 337,

338, 75 S.W. 1065; Melton v. Pace, 103 Tenn. 484, 53 S.W. 939.'' Supra, p. 376, 183 S.W. p. 1006

The material and determinative facts in Cheatham v. Allen (1951), 192 Tenn. 535, 241 S.W.2d 559, and Rankin v. Black (1858), 38 Tenn. 650, both of which cases are cited by defendant, are not analagous to the facts in the instant case and are not controlling.

The fact that the same 270 acre tract of land is involved in both the former suit and the instant suit is not necessarily determinative of the question of res judicata.

Let us assume, for example, that one tenant in common files an ejectment suit against his co-tenant, contending that he is the sole owner of certain land to the exclusion of all other persons, but the Court determines that the complainant is not the sole owner of the land but, instead, owns a one-half undivided interest therein, the defendant owning the other one-half undivided interest, and for that reason dismisses the suit with prejudice.

Then, let us further assume that the unsuccessful complainant files a second suit seeking a partition in kind or a sale for partition of that same land.

Certainly, the same parties and the same land are involved in the second suit as were involved in the first, but no plea of res judicata could be sustained for the obvious reason that the same issues are not involved in both suits.

In the second suit the complainant is only seeking to assert the very right, which in the former suit, the Court held and found was vested in him.

In the instant suit the complainant, Cole, is only seeking to assert the same right which, in the former

suit, the defendant averred was vested in him and which Chancellor Garrett held was vested in him.

Apparently, Chancellor Garrett did not file any memorandum opinion in the former suit setting forth his conclusions of law and fact since we do not find any such opinion in the record.

However, we are compelled by logic and reason to reach the conclusion that a necessary ingredient of his final decree was his conclusion that the evidence established the defense upon which Windle relied in his answer, to-wit: That the complainant did not own such interest in the land as would entitle him to enforce a partition by sale, or in kind, but that the only interest or claim which he had was for a share of the profits, if any, from a sale of one-third undivided interest, whenever that interest in the land should be sold.

The further fact that Windle's cross-bill was dismissed without prejudice indicates to us that Chancellor Garrett left open and undetermined the extent of rights and claims which Windle and Cole had against each other. For example, the claim made by Windle that interest on the sum of $13,319.15 was to be paid to him before the amount of profit should be determined.

In his answer to the cross-bill, Cole denied that any such interest was to be paid to Windle or taken into account before dividing profits.

Therefore, after carefully considering the record in the former suit we have concluded that the issues which are involved in the present suit were not involved in the former suit and that the plea of res judicata should not have been sustained.

The first assignment of error is sustained.

In his second assignment of error the complainant insists that the Chancellor erred in sustaining the defense of statutes of limitations raised by the defendant.

The defendant, by his cross-bill in the former suit, is now judicially estopped to assert that the complainant's claim is barred by any of the statutes of limitations.

A general statement of the doctrine of judicial estoppel is that where one states on oath in former litigation, either in a pleading or in a deposition or on oral testimony, a given fact as true, he will not be permitted to deny that fact in subsequent litigation though the parties may not be the same and this doctrine does not depend upon prejudice to the party invoking it. Melton v. Anderson (1948), 32 Tenn.App. 335, 222 S.W.2d 666 and other cases cited therein.

The defendant made oath to his answer and cross-bill, and the averment therein to the effect that complainant would be entitled to a share of profits "if and when" the land should be sold, is construed by us as meaning that none of said statutes of limitations will commence to run until the land is sold. Therefore, since the land has not yet been sold none of said statutes of limitations have yet commenced to run.

The second assignment of error is sustained.

In his third assignment, the complainant insists that the Chancellor erred in holding that the claim of complainant to said land creates a cloud upon the title of defendant and in the fourth assignment he insists that

there was no evidence upon which the Chancellor could have predicated the principal findings of his memorandum opinion.

Since the sustaining of the defenses of res judicata and statutes of limitations were found by the trial Court to be the premise upon which the defendant's cross-bill was sustained and the complainant's claim ordered to be removed as a cloud upon defendant's title, the third and fourth assignments must also be sustained, since the trial Court's action in ordering complainant's claim removed as a cloud upon defendant's title was based upon the erroneous premise that the complainant's action was barred by former adjudication and statutes of limitations.

The decree of the trial Court is reversed and set aside and the cause remanded to that Court for a trial upon the merits of the remaining issues raised by the pleadings.

The effect of this opinion is limited to our holding as follows: (1) The decree of Chancellor Garrett is not res judicata of the issues presented by pleadings in the instant case; (2) that the claim asserted by the complainant is not barred by the statutes of limitations; (3) it was error for the trial Court to order the claim of complainant removed as a cloud upon the title of the defendant in said land and divest said claim out of complainant, inasmuch as said removal and divestiture were based upon the trial Court erroneously sustaining the defenses of res judicata and statutes of limitations.

We do not decide any of the other issues raised by the pleadings and therefore all such other issues will be

determined by the trial Court upon remand. Costs of this appeal will be paid by defendant and the costs of the trial Court will abide the decision of that Court.

Shriver, P. J. (M.S.), and Todd, J., concur.